# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------X
MICHAEL ZABLAUSKAS,

        Plaintiff,

  -against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

        Defendant.
------------------------------------------------------X

Index No.: **155824/2024**

Date Purchased: June 25, 2024

Plaintiff designates New York County as the place of trial

**SUMMONS**

The basis of the venue is: Defendant's Principal Place of Business

Plaintiff resides at 394 West 255 Street, Bronx, NY 10471

To the above-named Defendant:

    You are hereby summoned to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs' attorney within twenty days after service of the summons exclusive of the day of the service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       June 25, 2024

Yours, etc.,

STEWART LEE KARLIN
LAW GROUP, PC

s/Stewart Lee Kalrin
STEWART LEE KARLIN, ESQ.
Attorneys for Plaintiff
111 John Street, 22nd Floor
New York, New York 10038
(212) 792-9670

<u>Defendant's Address</u>
NYC Law Dept. - Corporation Counsel
100 Church Street
New York, NY 10007

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
MICHAEL ZABLAUSKAS,

                                      Plaintiff,

     -against-                                                             **COMPLAINT**
                                                                                     *Jury Trial Demanded*
THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                                       Defendant
-------------------------------------------------------------------------X

Plaintiff, Michael Zablauskas ("Plaintiff"), by and through his undersigned attorney Stewart Lee Karlin, Stewart Lee Karlin Law Group, P.C., sues the Defendant the Department of Education of The City of New York (henceforth "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief and monetary relief, including past and ongoing economic loss, compensatory, and other damages for violations as a teacher pursuant to Title VII discrimination.

2. Plaintiff was discriminated against due to his race (Caucasian) for the reasons set forth below.

## PARTIES

3. Plaintiff was an employee of the Department of Education of the City of New York as a teacher and performed his job responsibilities effect or better at all times relevant in complaint. Plaintiff has commenced this action pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. 2000e et seq., in that Plaintiff was terminated from his employment due to his race. This action seeks declaratory relief, equitable relief, back pay, compensatory damages, and attorneys'

2

fees. At all relevant times, Plaintiff is an "employee" as defined in Section 701(b) of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e.

4. At all relevant times, Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York. Plaintiff was employed as a teacher with Defendant. Defendant is an employer within the meaning of Title VII.

## JURISDICTION AND VENUE

5. Plaintiff filed a claim with the United States Equal Employment Opportunity Commissioner ("EEOC") and received his Right to Sue Letter. This Action was commenced within ninety (90) days of receipt of the notice of right to sue letter conferring concurrent jurisdiction on this Court. (See the Notice of Right to Sue letter as Exhibit "A.")

6. This action's venue properly lies in New York County because the New York City Department of Education headquarters is at 52 Chambers. New York, NY 10007.

## STATEMENT OF FACTS

7. Plaintiff was employed by the DOE as a Special Education teacher at P.S. X017, a school in the Bronx.

8. At all times relevant, Plaintiff's performance was satisfactory.

9. While employed as a Special Education teacher, Plaintiff has been subjected to discrimination based on his race (Caucasian) that caused his discontinuance as a probationary teacher.

10. Plaintiff started working for the Department of Education (DOE) in 2014. He was rated effective during the 2015-2016, 2016-2017, 2017-2018, and 2018-2019 school years.

11. Plaintiff started working at P.S. 109 in the Bronx in 2015-2016 and PS 340 in the Bronx.

12. In the 2016-2017 school year, Plaintiff started working at P.S. X017. At this school, he

3

worked for three years. P.S. X017 is predominantly African American and Hispanic. Plaintiff was the only white male classroom teacher at his work site.

13. Plaintiff was targeted due to his race (Caucasian) and treated differently. For example, the first year he was at that school, he received a letter to file regarding his alleged failure to call parents when a student was injured during his prep time while another teacher was in the room. This letter was biased as the substance of the letters was inaccurate and misleading.

14. Regarding the incident of calling the parent, a student was injured during the Plaintiff's prep time when another teacher was in the room. Upon Plaintiff's return to the room, the art teacher informed Plaintiff that she had sent the student to the nurse and that the mother had already been called. Further, it is not his job responsibility to call parents and report an incident that he did not observe or was responsible for the class at the time. All other teachers in a similar position know that it is the responsibility of the prep teacher to phone parents and to bring the student to the nurse as he was informed was done.

15. In the same manner, Plaintiff was not given any remedial measures for his alleged deficiencies, unlike other teachers who are not Caucasian and who were given remedial measures, counseling, and opportunities to improve.

16. Furthermore, on or about February 2019, Plaintiff was given an inaccurate letter to the file by A.P. Stacy Alexander containing attendance issues which were incorrect. By contrast, an African American Teacher Mr. Southwell missed well over a month of school days during the 2018-19 school year and was not given a letter to file.

17. Further, many teachers at Plaintiff's site (African American or Hispanic) were late many times each week; however, they did not receive letters to file.

18. Also, Plaintiff submitted evidence that he was not absent on two of the days cited in the

letter; however, the letter to file was not removed.

19. At the end of the school year, Plaintiff's end-of-year attendance document showed that he was absent fewer days than the letter indicated, yet this mistake was not corrected to reflect negatively on his record.

20. Further, Plaintiff received another letter to file regarding an alleged failure to turn in lesson plans. However, he supplied evidence that he had indeed turned it in, along with lesson plans and a social studies unit on which he wanted feedback. However, this evidence was not considered.

21. Plaintiff was treated disparately than other teachers who were not Caucasian as they were allowed opportunities to demonstrate any inaccuracies in their files and were able to correct them; he was not.

22. Moreover, the Plaintiff also received a letter to file for not turning in a voluntary reflection form from Valerie Warman, an F-status employee; this was false.

23. Prior to receiving the letter, Ms. Wahrman emailed Plaintiff, letting her know that she could not find the Self-Reflection form they used for the discussion in the initial meeting.

24. Ms. Wahrman asked that Plaintiff please email the document to her, and he did so immediately, again the following day, when she had not responded. Plaintiff had emailed proof of such; however, it did not matter because he was being set up to be terminated due to his race. Specifically, a few months after Plaintiff's second meeting with Ms. Wahrman, Plaintiff received an email requesting the same voluntary self-reflection form and a letter stating that he may be brought up on charges because Ms. Wahrman could not find the copy of his self-reflection form that he had given her.

25. Conversely, in addition to hand-delivering the voluntary reflection paper, the Plaintiff

5

also emailed it to her prior to her requested deadline. Ms. Wahrman has the reflection paper because they spoke and planned that entire period around his teacher's self-reflection form.

26.  However, after sending the document in a timely manner, the Plaintiff was brought to a disciplinary hearing. In the hearing, Ms. Wahrman admitted that she did not take the lesson plans or many of the other documents that she requested from him.

27.  Plaintiff later received an e-mail around April/May from Ms. Wahrman requesting his reflection form again.

28.  Upon receiving the e-mail, the Plaintiff resent the form to her. However, Plaintiff still received a letter to file from Ms. Wahrman, who is not an administrator at his school. According to the UFT, the reflection form is voluntary.

29.  The Plaintiff supplied evidence that he had indeed turned it in at their initial meeting, along with lesson plans and a social studies unit on which he wanted feedback. The Plaintiff was told Ms. Wahrman was a mentor to help him and someone to trust.

30.  In the initial meeting, Ms. Wahrman told the Plaintiff that he was an amazing teacher and that she saw him teaching for many years to come.

31.  In the 2018-2019 school year, Marlin Hoggard (Principal, African American), A.P. Stacy Alexander (African American), and Ebony Sowell Alexander (Administrator, African American) were Plaintiff administrators during their last year with the DOE.

32.  During the last year of his employment, Plaintiff was to achieve tenure; however, his tenure was extended to approximately October 8, 2018.

33.  Even though his probationary period passed in early October 2018, he continued to work the entire 2018-2019 school year without an agreement to extend probation. Plaintiff's colleagues, who were African American and Hispanic probationary teachers, did not have their

6

probation extended and received tenure.

34. During this year, Plaintiff was constantly referred to as the "White Jesus" by the School administrators and staff for his hair and white appearance and was mocked due to his race.

35. For example, Dominique Philips, a second-year teacher at P.S. X017 (African American), received tenure at the same time the Plaintiff had been denied tenure. They were both supposed to receive tenure, but he did not due to his race. Further, A.P. Eboni Alexander-Sowell created and perpetuated the white Jesus name, which she used to refer to him.

36. Further, during Plaintiff's teacher team meetings, he was belittled for his race and hair length. Dominique Philips, a teacher in Plaintiff's teaching group, would always call him white Jesus if his hair was down.

37. Around Easter of 2019, Ms. Philips and Ms. Alexander-Sowell asked if Plaintiff would pose for a photo so they could say that they met white Jesus for Easter; being that Alexander-Sowell is an administrator, Plaintiff felt she had no option but to pose uncomfortably for the photo. That day in the teacher teach meeting, Ms. Philips explained to Plaintiff that he should not be offended that he was called white Jesus because Jesus was not white; he was black.

38. Plaintiff was referred to as White Jesus anytime he wore his hair down on a constant basis. Shortly after the photo was taken, a fellow staff member approached Plaintiff and apologized. Plaintiff asked him why he apologized, then he showed the Plaintiff a Facebook/Instagram post of the White Jesus photo with comments saying things like "the fake Jesus" and "Did you crucify him yet?"

39. In addition, Plaintiff was treated differently than other teachers of color in the same position concerning teacher observations. For instance, the morning after the 2019 evening parent-teacher conference, Ms. Eboni Alexander-Sowell and Mr. Hoggard stormed into his room

7

in sweat suits to conduct an observation. They asked me if he had a lesson plan. As he was every single day at P.S. X017, Plaintiff was prepared with a lesson plan.

40. Previous to this observation, Plaintiff had informed the administration that he had a seizure disorder (epilepsy) and anxiety and that he could shake at times if he became overly nervous. During this observation, Ms. Alexander-Sowell went through his desk and computer. She also used a laptop to record his nervous reaction to her recording him and going through his desk and computer. She continued to use the laptop to film him for the entire observation, worsening his reaction. Other teachers of color in the same position are not subjected to this discriminatory behavior, and they are not filmed during observations. Despite this treatment, he still followed his lesson plan and could continue teaching his group.

41. That same day, during Teacher Team meetings, other teachers spoke about observations. None of them were filmed, and none of them were Caucasian. For example, Ms. Mazareh, a (Lebanese) teacher, informed the group that her class was watching PBS Kids when they came in, and she had no lesson plans for the day because it was the day after parent conferences. Ms. Mazareh explained that after speaking to the administration and being that she was not prepared, she was given another opportunity to do her observation and did.

42. Another teacher in his cohort, Ms. Briton (of Jamaican descent), was also observed. She admitted to the group that she was not prepared with lesson plans because it was the day after parent conferences.

43. Just as Ms. Mazareh explained to Plaintiff, Ms. Briton also explained that she would have another opportunity to observe.

44. Notwithstanding this, Plaintiff was not given the remedial opportunities other teachers of color in comparable positions were given.

8

45. Before the end of the teacher team meeting session, Plaintiff asked his cohort if any had been recorded by Ms. Sowell; they all said they had not.

46. Plaintiff was observed using differentiated materials he had prepared for his students and using a lesson plan made specifically for that day. Plaintiff was ambushed and treated differently than his co-workers who were not Caucasian.

47. Further, the final observation was done by A.P. Stacy Alexander. As a result of the final observation, Plaintiff received a developing MOTP rating on his Advance Rating. The plaintiff reviewed the numbers and realized that without this observation, he would not have received an effective MOTP. Ms. Alexander's final evaluation was biased. The negatives she stated were proven wrong by the evidence she provided. The lesson Plaintiff used was formed in conjunction with Ms. Kimmel, the school's model teacher. Plaintiff followed her lead in lesson planning exactly as directed. Each student's worksheet was individualized according to his or her needs. Visual aid was relied upon, as well as the Ten-Frame for addition. Yet Ms. Alexander stated that the students had no visual or physical aids. Ms. Alexander stated that Plaintiff said, "Good job," adding double-digit numbers to a student who she said was adding single-digit numbers. However, looking at the evidence she provided, it can be seen he is clearly adding double-digit numbers. There was a complete disconnect between the observation write-up and what had occurred during the lesson. After receiving this final observation from the site secretary and reading the observation Plaintiff responded to Ms. Alexander asking that his response be included with the observation. Plaintiff responded in person and by e-mail. He detailed how her statements contradicted the evidence she appended and her statements in other parts of the observation. Plaintiff did not receive a response. At one point, she said she did not remember doing the observation. Plaintiff was ignored.

48. Moreover, the Plaintiff was treated differently regarding external professional development. At the start of the year, in his IPC, Ms. Stacey Alexander promised the Plaintiff that he would attend many professional development sessions that year.

49. Sadly, Plaintiff took part in no PDs outside of the building while he saw colleagues who were African American or Latino attending these same PDs. The Plaintiff was made to cover classes for them instead of being allowed to attend professional development.

50. Ms. Alexander requested that Plaintiff attend at least two outside professional development sessions in the 2018-2019 school year. However, just days before the PD, he would sometimes receive an e-mail from Ms. Stacey Alexander stating that he was not to attend. The only external professional development he could attend was Implicit Bias Training in June.

51. Additionally, Plaintiff was treated differently in terms of scheduling. During the 2018-2019 school year, other teachers had an equal distribution of morning and afternoon preparation periods to help them prepare for the day and fine-tune lessons. These teachers were African American and Hispanic. By contrast, Plaintiff had no preps in the morning, with the majority being the final period of the day, which was not a full period as he had to prepare his students for dismissal at the end of the day.

52. Plaintiff's schedule reduced his time to plan. Plaintiff looked at his colleagues' schedules and counted the number of preps they had. His class had one less special period than all others had.

53. A few weeks into the 2018-2019 school year, his class lost its second gym period because Ms. Mazareh requested that her class have gym instead of Plaintiff's. This led to the administration removing his only morning prep and the students' opportunity for physical education. The discrimination Plaintiff was subjected to also affected his students.

10

54. At P.S. X017, Plaintiff was the only white male classroom teacher at his site for the first two years, and the last year, a tenured music teacher was brought in.

55. Therefore, the Department of Education of the City of New York and the Board of Education of the City School District of the City of New York acted discriminatorily in discontinuing the Plaintiff due to his race. As a result of the discontinuance, a code was entered into the DOE's system, preventing him from working.

56. As a result of the foregoing, Defendant violated Title VII by discriminating against Plaintiff due to race, resulting in Plaintiff's termination.

57. All conditions precedent have been met prior to filing suit.

58. It has been necessary for Plaintiff to engage the services of an attorney to file and prosecute this action and thus also request attorneys' fees.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR RACE DISCRIMINATION

59. Plaintiff repeats, reiterates, and realleges each and every allegation as if the same were fully set forth at length herein.

60. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of his race, resulting in his termination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

## PLAINTIFF DEMANDS A TRIAL BY JURY

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, psychological, and other damages and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Reinstating Plaintiff to her former position and salary retroactively with seniority

and benefits.

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay;

3. Compensatory damages for past and future economic deprivation;

4. An Award of reasonable Attorney fees and litigation costs;

5. Granting such other and further relief that the Court deems just and proper.

Dated: New York, New York
June 25, 2024

            Respectfully Submitted,

            STEWART LEE KARLIN
            LAW GROUP, PC

            s/*Stewart Lee Karlin*
            STEWART LEE KARLIN, ESQ.
            *Attorneys for Plaintiff*
            111 John Street, 22nd Floor
            New York, NY 10038
            (212) 792-9670

## **ATTORNEY VERIFICATION**

STATE OF NEW YORK )

COUNTY OF NEW YORK) ss.:

I, the undersigned, an attorney, admitted to practice law in the Courts of New York State, state that I am the attorney of record for the Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge except as to those matters therein alleged to be on information and belief, as to those matters I believe to be true.

The reason this verification is made by your affirmant and not by the Plaintiff herein is that said Plaintiff resides in a county other than the county where your affirmant maintains his law office.

The grounds of your affirmant's belief as to all matter not stated upon my own knowledge are as follows:

Conversations with the Plaintiff and information contained in the file.

Dated: New York, New York
      June 25, 2024

                              s/ Stewart Lee Karlin
                              STEWART LEE KARLIN, ESQ.

## ATTORNEY CERTIFICATION

Pursuant to 22 NYCRR, Section 130-1.1.A the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statement under the penalties of perjury pursuant to the C.P.L.R.:

The undersigned attorney hereby certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers (s) or the contents therein are not frivolous as defined in Subsection C of Section 130-1.1.

Dated: New York, New York
       June 25, 2024

                                          s/ Stewart Lee Karlin
                                          STEWART LEE KARLIN, ESQ.

EXHIBIT "A"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/27/2024

**To:** Michael Zablauskas
394 West 255th Street
Bronx, NY 10471

Charge No: 520-2020-05464

EEOC Representative and email:    HERNAN MORALES
S/L Program Manager
hernan.morales@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
03/27/2024

Yaw Gyebi, Jr.
District Director

Cc: Stewart Lee Karlin, Esq.
The Law Offices of Stewart Lee Karlin PC
111 John Street - 22nd Floor
New York, NY 10038

Keisha Dufie Kufuor, Esq.
New York City Department of Education Office of Legal Services
52 Chambers Street, Room 308
New York, NY 10007

New York City Department Of Education
Queens Integrated Service Center
28-11 Queens Plaza North, Room 408
Queens, NY 11101

Please retain this notice for your records.