USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/16/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL ZABLAUSKAS,

                              Plaintiff,

            -against-

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                              Defendant.

1:24-cv-05633 (MKV)

**OPINION AND ORDER
GRANTING MOTION
TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Michael Zablauskas brought this action against the Department of Education of the City of New York asserting a single claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*  [ECF No. 14, ("AC" ¶¶ 1, 70)].  Before the Court is Defendant's motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [ECF No. 24].  For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND[1]

### I.   Factual Background

Plaintiff started working for the Department of Education in 2014 and was an employee of Defendant.  AC ¶¶ 3, 4, 7, 10.  In the 2016–2017 school year, Plaintiff began working as a Special Education teacher at P.S. X017.  AC ¶¶ 7, 12.

Plaintiff, who is Caucasian, alleges that P.S. X017 is predominantly African American and Hispanic.  AC ¶ 12.  Plaintiff alleges that he was the only white male classroom teacher at P.S.

---

[1] The facts stated herein are drawn from Plaintiff's Amended Complaint, ECF No. 14, and are assumed to be true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

X017, AC ¶¶ 12, 15, and he was subjected to disparate treatment and ultimately terminated from his employment due to his race.  AC ¶¶ 3, 13.

Plaintiff alleges that he was not given remedial measures for alleged deficiencies whereas other teachers, who are not Caucasian, were provided remedial measures like counseling and other opportunities to improve.  AC ¶ 18.  Plaintiff further alleges that he received a letter to the file by A.P. Stacy Alexander for alleged attendance issues while Mr. Southwell, an African American teacher, missed well over a month of school days and many other "teachers at Plaintiff's site (African American or Hispanic) were late many times each week" and neither Mr. Southwell nor the other teachers received a letter to file.  AC ¶ 19.

Plaintiff further alleges that there were multiple instances where he attempted to provide evidence to rebut errors related to letters to his file, but the evidence was not considered and the alleged errors were not corrected.  AC ¶¶ 19, 21–22, 24–25, 26–28, 33.  Plaintiff alleges that he was treated disparately from other teachers who were not Caucasian because they were allowed opportunities to demonstrate any inaccuracies in their files and were able to correct those errors, whereas he was not.  AC ¶ 25.  Plaintiff also alleges that during the final year of his employment, he was supposed to achieve tenure, but his probationary period was extended to October 2018. AC ¶¶ 36–37.  Plaintiff alleges that his colleagues, who were African American and Hispanic probationary teachers, did not have their probation extended and received tenure.  AC ¶ 37.  In particular, Plaintiff alleges that Dominique Philips, an African American second-year teacher at P.S. X017, received tenure at the same time that Plaintiff had been denied tenure.  AC ¶ 39.

Plaintiff alleges that during the school year he "was constantly referred to as 'White Jesus' by the School administrators and staff" including A.P. Eboni Alexander-Sowell and Dominique Philips due to "his hair and white appearance."  AC ¶¶ 38–39, 42.  Plaintiff alleges that in 2019

"Ms. Philips and Ms. Alexander-Sowell asked if Plaintiff would pose for a photo so they could say that they met white Jesus for Easter; being that Alexander-Sowell is an administrator, Plaintiff felt she [sic] had no option but to pose uncomfortably for the photo."  AC ¶ 41.

Plaintiff further alleges that "Plaintiff was treated differently than other teachers of color in the same position concerning teacher observations."  AC ¶ 43.  In particular, Plaintiff alleges that the morning after the 2019 evening parent-teacher conference, Ms. Eboni Alexander-Sowell and Mr. Hoggard entered his classroom to conduct an observation.  AC ¶ 43.  Plaintiff alleges that Mr. Hoggard and Ms. Eboni Alexander-Sowell went through his desk and computer and pretended to record him.  AC ¶¶ 45–46.  Plaintiff alleges that "[o]ther teachers of color in the same position [were] not subjected to his discriminatory behavior."  AC ¶¶ 47, 52.  Specifically, Plaintiff alleges that, on that same day, he spoke with other teachers, none of whom were Caucasian, about their observations and none of them were filmed.  AC ¶ 48.  In particular, Plaintiff points to Ms. Mazareh, a Lebanese teacher, who allegedly informed a group of teachers that her class was watching PBS Kids during her observation, she had no lesson plans, and was unprepared, but that she was given another opportunity to do her observation.  AC ¶ 48.  Plaintiff also alleges that Ms. Briton, a teacher of Jamaican descent, allegedly admitted to Plaintiff that she was not prepared with lesson plans during her observation and that she was given another opportunity to be observed.  AC ¶¶ 49–50.  Plaintiff alleges that unlike other teachers of color in comparable positions he was not provided remedial opportunities.  AC ¶ 51.  Plaintiff further alleges that Ms. Alexander's final evaluation was biased and the negative portions in her observation were proven wrong by the evidence he provided.  AC ¶¶ 55–56.  Plaintiff alleges that after receiving this final observation, Plaintiff responded to Ms. Alexander detailing how her statements contradicted the evidence she appended and her statements in other parts of the observation.  AC ¶ 57.

Moreover, Plaintiff alleges that he was treated differently regarding external professional development. AC ¶ 58. Specifically, Plaintiff alleges that at the start of the year, Ms. Stacey Alexander promised Plaintiff that he would attend many professional development sessions. AC ¶ 58. However, Plaintiff took part in no professional development sessions outside of the building while his colleagues, who were African American or Latino, were able to attend these professional development sessions. AC ¶ 59. Plaintiff alleges that he was required to cover classes instead of being allowed to attend professional development sessions. AC ¶ 59. Plaintiff alleges that he received an e-mail from Ms. Stacey Alexander stating that he was not to attend certain professional development sessions and was ultimately only able to attend one external professional development session on Implicit Bias Training. AC ¶ 60.

Plaintiff alleges that he was also treated differently in terms of scheduling because during the 2018-2019 school year, other teachers, who were African American and Hispanic, had an equal distribution of morning and afternoon preparation periods to help them prepare for the day and fine-tune lessons. AC ¶ 61. Plaintiff alleges that by contrast, he had no prep sessions in the morning and one less special period than all other teachers and this schedule reduced his time to plan. AC ¶¶ 61–62.

Ultimately, Plaintiff alleges that he was discontinued on or about September 1, 2019 despite being an effective teacher. AC ¶ 64.

## II. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commissioner ("EEOC") on August 21, 2021. AC ¶ 5. After receiving his Right to Sue Letter,

Plaintiff commenced this action by filing a Complaint within 90 days of receipt of the EEOC Right to Sue Letter.

Thereafter, Defendant filed a pre-motion letter seeking leave to file a motion to dismiss, [ECF No. 6], which Plaintiff opposed. [ECF No. 9]. In response to the parties' competing letters, the Court issued an Order providing Plaintiff an opportunity to amend his Complaint in response to arguments raised in Defendant's pre-motion letters and setting a briefing schedule for Defendant's anticipated motion to dismiss. [ECF Nos. 10, 21].

Plaintiff elected to file an Amended Complaint, [ECF No. 14], and shortly thereafter Defendant moved to dismiss. [ECF No. 24]. In support, Defendant filed a memorandum of law, [ECF No. 25, ("Def. Mem.")], Plaintiff filed his opposition, [ECF No. 29, ("Pl. Opp.")], and Defendant replied. [ECF No. 32, ("Def. Reply")].

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation marks omitted); *see also Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (same).

## DISCUSSION

### I.    Plaintiff's Title VII Claim Is Untimely

The administrative exhaustion provision of Title VII requires "that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act." *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (Under Title VII, plaintiffs must file a charge with the EEOC "in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.").

The parties agree that Plaintiff had 300 days from September 1, 2019, or until June 27, 2020, to timely file a charge of discrimination with the EEOC. *See* Def. Mem. at 7–8; Pl. Opp. at 10.  However, Plaintiff did not file his charge with the EEOC until August 24, 2020.  As such, his Title VII claims are untimely.

Plaintiff, in an attempt to save his untimely claims, points to New York state executive orders, issued by Governor Andrew Cuomo, tolling state statutes of limitations and other procedural deadlines during the COVID-19 pandemic for a total of 228 days.  Pl. Opp. at 10–11. As Defendant correctly argues, it is well settled law in this district that these New York state executive orders which tolled state statute of limitations and other procedural deadlines during the COVID-19 pandemic do not apply to federal claims such as Plaintiff's Title VII claim.  *See Ekpe v. City of New York*, No. 20-CV-9143, 2024 WL 1621207, at *5 n.4 (S.D.N.Y. Apr. 12, 2024) (dismissing Plaintiff's argument that New York state executive orders tolling statutes of limitations during the COVID-19 pandemic apply to his federal claims because "[w]here, as here, a federal statute contains the statute of limitations, it is unaffected by state tolling rules); *see Verne v. N.Y.C.*

*Dep't of Educ.*, No. 21-CV-5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022) ("But those state Executive Orders had no effect on tolling [] federal statutes of limitation."); *Everett v. New York City Dep't of Educ.*, No. 21-CV-7043, 2022 WL 2342693, at *5 (S.D.N.Y. June 29, 2022) ("While this Executive Order tolled the 'procedural laws' of New York, it did not apply to [Plaintiff's Title VII claim"); *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21-CV-4951, 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022) (concluding the New York state executive order tolling statute of limitations due to the COVID-19 pandemic "does not apply to Plaintiffs' FLSA claim" because they are claims asserted under federal law); *O'Rourke v. Ehsan Food Corp.*, No. 19-CV-6162, 2020 WL 6894663, at *3 (S.D.N.Y. Nov. 24, 2020) ("Governor Cuomo's order does not purport to toll, nor could it, the time periods established by federal law").

As the above caselaw from this district makes abundantly clear, Governor Cuomo's Executive Order does not apply to Plaintiffs' federal Title VII claim and as Plaintiff acknowledges "the EEOC did not toll the 300-day limitation period" due to the CVOID-19 pandemic. *See* Pl. Opp. at 11. Therefore, Plaintiff's Title VII discrimination claim is untimely.

## II. Plaintiff's Claim Is Not Subject to Equitable Tolling

Plaintiff contends that, even if his claim is untimely, equitable tolling is warranted in this situation. Pl. Opp. at 12–14. In particular, Plaintiff argues that equitable tolling is warranted here because (1) in November 2019 he had to care for his wife, who was extremely ill, for about two weeks, (2) in March 2020 Plaintiff was bedridden with COVID-19 for one to two weeks and did not fully recover for eight weeks, and (3) as a resident of New York "everything shut down" and

he had to "remain in his home for about two months." Pl. Opp. at 14. Plaintiff argues that these events impacted his ability to pursue his legal options with the EEOC. Pl. Opp. at 14.

The filing deadline for the formal complaint is not jurisdictional and therefore, like a statute of limitations, is subject to equitable tolling. *See, e.g., Bruce v. United States Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002). "Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000)). However, the Second Circuit has made clear that "equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Joseph v. Cnty. of Westchester*, No. 24-523, 2025 WL 1088429, at *2 (2d Cir. Apr. 11, 2025) (summary order) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)); *see also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (equitable tolling is "a drastic remedy applicable only in rare and exceptional circumstances"). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). In addition, there must be a causal connection between the extraordinary circumstances and the litigant's failure to timely act. *See Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.").

Plaintiff has failed to allege that he acted with reasonable diligence in pursing his claim during the period he seeks to have tolled. *See generally* AC; Pl. Opp. at 14. Plaintiff's failure to

allege any facts in his Amended Complaint or in his opposition to Defendant's motion to dismiss regarding his efforts, if any, to diligently pursue his claims during the time period he seeks to have tolled is justification alone to deny Plaintiff equitable tolling. *See Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) ("If the petitioner is unable to establish that he diligently attempted to file his petition, the extraordinary circumstances on which his tolling claim is based cannot be said to have caused the lateness of his petition."); *Scott v. New York City Transit Auth.*, No. 23-CV-9318, 2024 WL 3429427, at *4 (S.D.N.Y. July 16, 2024) ("Plaintiff does not allege that he acted with reasonable diligence—i.e., actively pursued his claims—during the period he sought to have tolled. This is grounds alone to conclude that equitable tolling is unwarranted.") (internal citation omitted); *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 672 (S.D.N.Y. 2024) ("where a plaintiff provides no factual allegations that reflect that the plaintiff pursued their rights diligently and was frustrated by extraordinary circumstances, the court may reject a claim of equitable tolling made in a memorandum of law in opposition to a motion to dismiss"); *Shin v. NBC Universal Media, LLC*, No. 23-CV-10996, 2025 WL 438297, at *8 (S.D.N.Y. Feb. 7, 2025) (denying Plaintiff equitable tolling because the "complaint and papers in opposition to the motion to dismiss" fails to "identify any action she took during [the 300 day] period to diligently pursue her rights").

Furthermore, Plaintiff has also not demonstrated circumstances so extraordinary and rare to justify equitable tolling. As an initial matter, Plaintiff's allegation that he is entitled to equitable tolling because "as a resident of New York City" he had to remain in his home for two months and "everything shut down" is plainly insufficient. *See, e.g.*, *Carlaftas v. Bevapor Trucking Servs. LLC*, No. 21-CV-10253, 2023 WL 251940, at *2 (S.D.N.Y. Jan. 18, 2023) (collecting cases holding that "Plaintiff still must plead more than the existence of the pandemic to show the extraordinary circumstances required for equitable tolling," which is "reserved for those cases

where it was *impossible* for a plaintiff to timely file their claims") (emphasis in original); *see also Gomez v. Henry St. Settlement,* No. 20-CV-5585, 2021 WL 4943509, at *6 (S.D.N.Y. July 27, 2021) ("[T]he disruption caused by the COVID-19 pandemic—which of course affected all New Yorkers in the spring of 2020, not just plaintiff—is not, standing alone, 'sufficient to warrant equitable tolling' absent a more specific personal showing (for example, that a specific government-imposed restriction prevented him from meeting his filing deadline).").

Plaintiff attempts to include "more specific" allegations with respect to the impact of the COVID-19 pandemic, including the fact that he and his wife, at different times, suffered from COVID-19. Pl. Op. at 14. However besides a conclusory allegation that those episodes prevented him "from pursing any legal options," Pl. Opp. at 14, Plaintiff fails to explain how these instances caused him to be unable to file a timely complaint with the EEOC within 300 days of his termination on September 1, 2019. This is insufficient to justify equitable tolling. *See Rodriguez v. Hudson Valley Chrysler*, No. 20-CV-09646 , 2021 WL 5910173, at *3 (S.D.N.Y. Dec. 14, 2021) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)) ("A plaintiff is not entitled to equitable tolling unless he can, 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.' "); *Mosca v. United States*, 602 F. Supp. 3d 344, 347 (E.D.N.Y. 2022) ("Plaintiff does not explain how these events specifically prevented her and her attorneys from timely filing the Complaint. Nor does Plaintiff explain why her counsel could not have filed the Complaint in the five months after USPS denied her administrative claim but before the March 2020 lockdowns."); *Pianoforte v. Little Red Sch. House*, No. 21-CV-5003, 2022 WL 2713659, at *6 (S.D.N.Y. July 13, 2022) (Plaintiff failed to present "a

particularized description of the conditions that allegedly prevented her from timely filing her lawsuit").

In sum, Plaintiff has wholly failed to carry his burden of establishing that this is the type of rare and exceptional circumstance which warrants equitable tolling, and therefore his Title VII claim is untimely.[2]

### CONCLUSION

Accordingly, Defendant's motion to dismiss is GRANTED and Plaintiff's Title VII claim is DISMISSED with prejudice.  The Clerk of Court is respectfully requested to terminate docket entry 24 and to close this case.

**SO ORDERED.**

Date:  **September 16, 2025**
       **New York, NY**

                                    _Mary Kay Vyskocil_
                                    **MARY KAY VYSKOCIL**
                                    **United States District Judge**

---

[2] Given the conclusions reached herein, the Court need not and does not reach Defendant's remaining arguments seeking dismissal based on Plaintiff's failure to state a claim upon which relief can be granted.

11